**In re Donald DUPREE and Rita Dupree, Debtors.**

**Donald DUPREE and Rita Dupree**

v.

**LOMAS MORTGAGE USA, INC., a Texas corporation, and American General Finance, Inc., an Oklahoma corporation, Defendants.**

**Bankruptcy No. BK–91–03378–LN.**

**Adv. No. 95–1050–LN.**

United States Bankruptcy Court, W.D. Oklahoma.

July 20, 1995.

---

Patrick E. Moore, Kenneth C. McCoy, Oklahoma City, Oklahoma, for Plaintiffs/Debtors.

Mark Kuehling, Oklahoma City, Oklahoma, for Lomas Mortgage USA, Inc.

Letha Sweeney, Oklahoma City, Oklahoma, for the Chapter 13 Trustee.

## ORDER ON MOTIONS TO RECONSIDER

PAUL B. LINDSEY, Chief Judge.

On June 16, 1995, this court entered its Order on Motions for Summary Judgment in this adversary proceeding, which had been brought by debtors following the successful completion of their Chapter 13 plan. In that order, this court determined: That an order entered in June 1991 by the judge to whom the underlying bankruptcy case was then assigned had been and remained valid and binding and not subject to collateral attack, and that debtors' confirmed Chapter 13 plan effectively and with sufficient notice to defen-

dant Lomas Mortgage USA, Inc. ("Lomas") of debtors' intention to modify Lomas' claim, bifurcated and provided for lien-splitting with regard to Lomas' first mortgage, dividing Lomas' claim into an allowed secured claim of $31,000 and an allowed unsecured claim of $12,825.03. Lomas was directed to adjust its records in order to show the principal balance of its first mortgage as $31,000 as of May 10, 1991, to credit all payments received thereafter from debtors to principal and interest, with interest at the contract rate, and to prepare, file and provide to the court a schedule reflecting such adjustments and credits to and including May 31, 1995. Finally, Lomas was granted a lien on debtors' principal residence, subordinate only to Lomas first mortgage lien, securing a 38% dividend provided for holders of allowed unsecured claims in debtors' modified Chapter 13 plan, in the amount of $4,873.51, to bear interest on the unpaid balance from and after July 20, 1994 at the contract rate of interest on the first mortgage note, until paid in full.

On June 26, 1995, debtors timely filed their motion to reconsider this court's order and judgment. On June 27, 1995, Lomas filed its motion to reconsider. Lomas' motion, although untimely, will be addressed by the court in this order. On June 30, Lomas filed its response to debtors' motion.

## CONTENTIONS OF THE PARTIES

### Lomas.

In its motion to reconsider, Lomas simply reiterates its primary original argument— that it is contrary to law to permit debtor to circumvent the statutory claims allowance procedure by filing a Chapter 13 plan which provides for treatment of a claim in a manner or amount contrary to the timely filed proof of claim. Lomas also asserts that the court's order is unclear as to how the unsecured portion of Lomas' claim is to be paid, and that the court abused its discretion in restructuring and extending the payment of a debt beyond the three year period provided by the Code.

### Debtors.

In their motion to reconsider, debtors attack a number of the findings on which they contend the court's conclusions were based. They contend that their obligation to make payments directly to Lomas extended only to the ongoing mortgage payment, and that the trustee was required to pay the unsecured dividend provided for by the plan. Debtors refer to the trustee's Notice of Claims Filed and Intention to Pay Claims, which specifically addresses Lomas' first mortgage and provides that the regular payment is to be made outside the plan, but makes no reference to the unsecured portion of the claim. Finally, debtors contend that, with the exception of regular payments on mortgages where debtors are current in their obligations, the trustee has always required that payments be made through the trustee, and that the court's conclusion that debtors had assumed the obligation to pay the unsecured portion of the claim outside the plan is inconsistent with the ongoing practice of the trustee.

### Trustee.

The Chapter 13 trustee, who has previously not taken an active role in this controversy, was requested by the court to respond to the debtors' motion to reconsider. This request was made because debtors make several assertions with regard to the trustee's policies and with regard to her actions and failures to act in this particular case. The trustee concedes that debtors are correct in stating that their plan, as originally confirmed, would have paid at least a 20% dividend to holders of unsecured claims, including the unsecured claim of Lomas. Just as debtors contend that nothing in the plan specifically requires them to pay the unsecured dividend to Lomas, the trustee contends that nothing in the plan specifically requires that it be paid by the trustee. The trustee also notes that her Notice of Claims Filed specifically lists the full claim of Lomas as being paid outside the plan, and makes no reference to the unsecured portion of that claim. Finally, the trustee notes that counsel for debtors was provided copies of the trustee's annual reports for the fiscal years 1992 and 1993 and, at his request, a print-out of all

payments and receipts from the filing of the petition through May 1994; that these documents detailed all receipts and payments by the trustee during the particular period covered; and that no payment to Lomas was shown on any of them. The trustee concludes that debtors, or at least debtors' counsel, knew or certainly should have known that no payments were being made by the trustee to Lomas.

### Lomas (in Response to Debtors' Motion).

Lomas asserts that debtors, who are responsible for preparing and filing the plan, are also responsible for any confusion arising from it, and that Lomas should not suffer any loss due to debtors' unclear drafting. Lomas also makes the point made by the trustee, that debtors should have known that no payment had been made on its unsecured claim. Finally, Lomas contends that it was not required to file an unsecured claim after the amount of the allowed secured claim had been established, as debtors apparently now believe was necessary.

### DISCUSSION

 As to Lomas' contention that the court's order is contrary to law in treating debtors' confirmed plan to prevail over a timely filed proof of claim to which no objection was filed, that issue was fully discussed in the order, and the basis for the court's decision with regard to it was fully disclosed. Lomas is now apparently relying upon the same authorities which were relied upon originally, and this court finds no basis upon which its conclusion should be changed.

Based upon the trustee's response to debtors' motion to reconsider, it appears that the court was in error to the extent that it found that debtors' plan, as originally proposed, would not have provided sufficient funds for the trustee to pay the secured claims and a 20% dividend to the holders of unsecured claims, including that of Lomas. The original plan apparently would paid at least that amount, but only if the entire base amount been paid over the 57–month term of the plan.

When debtors modified their plan, however, they had the benefit of two annual reports from the trustee and, in addition, a cumulative print-out of all receipts and disbursements since the filing of the petition. These documents made clear that the trustee had made no payments whatever to Lomas. Nevertheless, debtors proposed a modification which would complete their plan some 21 months earlier than as originally confirmed, would reduce the base amount required to be paid by them by $8,715, and would require no further payment from them. Clearly, therefore, debtors could not have expected any payment to be made by the trustee to Lomas—the case was closed a month later, and $415 was refunded to debtors by the trustee.

Debtors contend that the dividend on Lomas' unsecured claim should have been paid by the trustee, and the trustee contends that debtors undertook to pay all amounts to which Lomas was entitled, outside the plan. This court agrees with debtors to the extent that the trustee normally would have resisted any suggestion or effort by debtors to pay claims directly and outside the plan. The only exception would be first mortgage payments when the debtors are current in their obligations to the mortgagee. In all other instances, the trustee would insist that debtors provide for the payment of any claim by the trustee within the plan. The trustee's traditional argument in that regard is that when payments are permitted to be made directly, the trustee has no way of monitoring whether the required payments are being made, and is therefore unable to fulfill her fiduciary responsibilities.

Obviously, the trustee did not require payment of the dividend on the unsecured portion of the undersecured claim of Lomas in this case. In fact, she took no action whatever with regard to the unsecured claim of Lomas, treating its entire claim, secured and unsecured, as being the responsibility of debtors, to be paid outside the plan.

Had the trustee adhered to her normal procedures, the dividend originally promised to holders of allowed unsecured claims, in-

cluding that of Lomas, would have been paid by the trustee out of the plan payments. Payment in full of all such amounts, however, would not have been possible in 36 months, and payment of the original base amount would have required 57 months. When debtors were able to pay the allowed secured claim of American General Finance, Inc. in full from insurance proceeds, and when they at that time ascertained from the trustee that a dividend of 38% would be paid to holders, they saw an opportunity to substantially reduce the base amount, as well as the term of their plan. The modification which they proposed, and which was ultimately approved, however, gave no consideration whatever to the fact that Lomas had received nothing with regard to its allowed unsecured claim, even though the original plan promised a 20% dividend to the holders of all such claims. When the modification was approved, it became the plan, and the promised dividend was increased to 38%.[1]

■ While debtors and the trustee are arguing over whose responsibility it was to pay the dividend to Lomas, Lomas correctly states that it was entitled to treatment equivalent to that afforded to other holders of allowed unsecured claims. Lomas also correctly asserts that it was not required to file an unsecured claim after its undersecured claim was bifurcated. The action of the court in ordering the bifurcation and establishing the amount of the allowed secured and unsecured claims was all that was required. The debtors should have then clearly provided for the payment of the dividend on the allowed unsecured portion of the Lomas claim, and the trustee should have insisted upon such provision. Neither debtors nor the trustee did a very good job in that regard.

Since Lomas was not paid anything on its allowed unsecured claim prior to the filing of the trustee's Final Report and Account, or thereafter, for that matter, the court ordered that the amount which should have been paid to Lomas prior to that date should thereafter be secured by a lien on debtors' property, and that the amount should, from and after the date the Final Report and Account was filed, bear interest at the contract rate applicable to debtors' first mortgage. It was made clear that debtors could pay all or any part of the amount at any time. Of course, it would be wise to do so at the earliest possible date in order to reduce the effect of the accumulating interest. If debtors have not paid it in full prior to the completion of payments on their first mortgage, which will not occur for many years, they must then continue making monthly payments in the same amount as are being made on the first mortgage until the dividend amount and all accrued interest on it have been paid in full. Lomas' complaint that the court did not clearly describe the requirements for payment of the dividend amount is without merit.

This court's creation of a lien securing the dividend obligation provides adequate assurance that Lomas will ultimately be paid, and the requirement that interest be paid on the amount owed provides compensation for the time value of the money Lomas would have received had it been treated the same as all other holders of allowed unsecured claims.

■ Debtors complain that the trustee should have paid the dividend to Lomas, and that they should not be required to do so now. Debtors conveniently forget that the trustee does not pay claims with her own funds. She pays them with funds provided by debtors. Ultimately, debtors must fund their own plans. The trustee has applied all funds paid to her to the payment of appropriate administrative expenses and the debts provided for by debtors' plan. Debtors have not provided funds to the trustee from which she could pay the dividend on Lomas allowed unsecured claim. As the court noted in its original order, debtors appear to have concluded that the portion of Lomas unsecured claim for which debtors obligated themselves has somehow magically disappeared. Such is not the case.

Since their plan has been completed and the majority of their unsecured debts have been discharged, debtors must now proceed

---

1. See § 1329(b)(2).

to meet the obligations which it did not meet during the pendency of the plan. They may make payments to Lomas in reduction of their obligation with regard to the allowed unsecured claim. The accrual of interest on the amount will undoubtedly provide an appropriate incentive to do so at an early date. The total amount which debtors will ultimately pay will exceed the amount originally contracted for in their modified plan only by the amount of accrued interest, the provision of which was necessary in order to place Lomas in a position comparable to that of the other holders of allowed unsecured claims who received their dividend prior to the filing of the trustee's Final Report and Account. Debtors will benefit from not having to pay the appropriate trustee's fee on amounts paid to Lomas directly, and from not having provided for the payment of the dividend concurrently with the dividend on other like claims.

It would have been much better had the trustee insisted upon the unsecured portion of the bifurcated undersecured claim being paid through the plan, as was her normal procedure. She did not do so, however, and debtors did not make clear that they were not undertaking to make those payments outside the plan. Debtors must bear the ultimate responsibility for the result, since they knew or certainly should have known that no payment had been made on that portion of the Lomas claim by the trustee at any time during the 36-month term of the plan, and that no payment could have been made since no funds were provided for the purpose. Yet debtors did not mention or attempt to correct the obvious omission, but simply sought to ignore it, then place the blame on the trustee. As noted above, the funding of debtors' obligations under confirmed plans is the responsibility of debtors—and of no one else.

Based upon the foregoing, the motions to reconsider filed by debtors and by Lomas will be granted, and upon reconsideration, the court will reaffirm the findings, conclusions and decision contained in its order herein dated June 16, 1995.

IT IS SO ORDERED.